The next case this morning is number 518-0058, People v. Baker. Arguing for the appellant, Clifford Baker, is Amanda Horner. Arguing for the appellee, People of the State of Illinois, is Jennifer Camden. Each side will have up to ten minutes for their argument. The appellant will also have five minutes for rebuttal. Please remember only the clerk is permitted to record these proceedings today. Good morning, Council. I apologize. We had some technical difficulties this morning and some arguments that lasted a little longer than expected. I appreciate your patience. Before we get started, the state has filed a motion to cite additional authority, the new case that's come out, the People v. Lesbie case. We'd ask Council, do you need additional time to supplement briefs, add anything after oral argument? I do not, Your Honor. Not based on that, Your Honor. Okay. Then, are you ready to proceed? I am, Your Honor. Just this morning, we're going to grant that motion. I'm sorry. Just in case, thank you. Yes, we're going to grant that motion and then state that they do not need any additional time to supplement anything in writing, correct? That's correct, Your Honor. Yes, Your Honor. Thank you, Justice Cates. Ms. Horner, go right ahead. May it please the court, Council. My name is Amanda Horner from the State Appellate Defender's Office. Today, I represent Mr. Clifford Baker. Your Honors, Clifford was 15 years old when he was sentenced to natural life for two home invasions. Following a remand pursuant to Miller v. Alabama, Clifford was resentenced to 85 years in prison. And according to the Department of Corrections, he will be 99 years old at the time of any potential release. The only issue before this court today was the appropriateness of the life sentence given to Clifford. As explained in his briefs and an argument here today, the trial court did not comply with Miller when it sentenced Clifford to 85 years in prison. And as a result, Clifford would respectfully request that this court reverse and remand for a new sentencing hearing. Your Honors, in the briefs before this court, the State and Clifford spent a lot of time analyzing factors that make up Clifford's sentence. Criminal history, the aggravating factor of deterrence, his youth. And the State attempts to distill Miller into tiny details that can be refuted one by one. But regardless of how this court breaks down the case law of all of our arguments here today, everything comes back to a single question. How do we know that Clifford was so incorrigible and that he was beyond rehabilitation? That's it. How do we know that Clifford was so past the point of rehabilitation that at 15 years old, he deserves to die in prison? And no matter how much the State and Clifford argue over factors in aggravation or mitigation, or even the factual issues in the record, at the end of the day, everything comes back to that single question. Was Clifford so incorrigible that he was beyond rehabilitation? Miller v. Alabama, at its core, is more than just a factor to be considered. In fact, it created a default presumption for juvenile sentencing that teenagers are not beyond the point of rehabilitation. As a general rule, they do not deserve life sentences despite their crimes because they are just less culpable. And as their brains continue to develop and mature, they can be rehabilitated, unlike their adult counterparts. The flip side of this rule, of course, is that there are rare juveniles, and something in the record will indicate that because of that particular juvenile or the particular crime itself, that he or she cannot be rehabilitated. In other words, the default is that life sentences are inappropriate. And intellectually, the idea that teenagers are less culpable and can be rehabilitated makes perfect sense. But in application, the idea is more uncomfortable. Teenagers like Clifford, who raised Miller claims, they didn't commit retail theft or drug offenses. These teenagers, the one Miller spoke about, commit murder. The very crimes that we instinctively want to punish harshly as a society. But again, the rule is that these teenagers can be rehabilitated, and they should receive a life sentence unless there is something beyond the average case. That is the default. And murder alone cannot move the needle towards incorrigibility. So before Clifford can be sentenced to 85 years in prison, the record must establish that something about Clifford, something about the crime or the circumstances generally, makes him worse than other murderers similarly situated, other teenagers who have also committed these crimes. And here, neither the trial court nor the state have identified anything about Clifford or these murders that establish he is not the default. And in reviewing these cases, it's often difficult to determine whether the trial court complied with Miller. And the Illinois Supreme Court recently spoke about that in People v. Loesbe, the case the state asked to supplement. And Loesbe, in talking about Miller, said that the United States Supreme Court gave reviewing courts very little guidance. But it said that reviewing courts here in the state of Illinois, when a sentence of life imprisonment was handed down, reviewing courts should look to make sure the trial court made an informed decision based on the totality of the circumstances that the defendant was incorrigible and a life sentence was appropriate. Essentially, the court stated two things must happen. One, the trial court must make an informed decision. And two, the decision must be made on the totality of the circumstances. So Clifford talked about both of these in the briefs. And the first part of that equation is the trial court made an informed decision. And here, there's a couple of factual errors that really sort of say that the trial court didn't make an informed decision. And even though this trial court came in late and stated for the record that he absolutely read the record, it's fairly lengthy, the trial court goes on to say that Clifford made certain statements that he was going to do something bad prior to the commission of the offense in these text messages or MySpace messages rather. And that's actually not what Clifford said. And the state has argued that the trial court didn't identify the specific text messages themselves and could have been talking about other information. But quite frankly, your honors, that's a red herring. The trial court specifically referenced MySpace messages and those only messages that were admitted were between Clifford and Kelly Lang. And what's more, it's less important how everyone else interpreted those messages. So if Kelly Lang months later at trial said that Clifford said in those messages he was going to do something bad, that matters not at all. What actually matters is what the actual messages said in determining what Clifford was thinking prior to the offense. The other sort of area where the trial court made a mistake of fact is it sort of attributed to Clifford that he was intelligent. And because of that intelligence, he was able to pull back and find a way out of the crime. And that's simply not true. He was on the border between low average and intellectually disabled, his IQ was only 78. And the state sort of rebuttal to that as well, he passed most of his GED classes. He passed most of them, not all of them. But you know, the GED is a minimum competency test, Your Honor, and he could even pass that entirely. So to suggest that at 15, he had the sort of intelligence to extricate himself from this situation, particularly with his mental health issues and all the other things that were happening is just not accurate. The other thing to look at is the totality of Clifford's case. He's never denied that he committed two homicides or that he invaded two homes and he will not attempt to do so here. But when we look at what was happening in Clifford's life, it sort of tells a much larger story. I mean, for 15 years, he had no criminal history. He had never been in trouble, not even for petty issues. And then 11 days before this crime occurred, 11 days, so less than two weeks, he, you know, he shoots himself in the stomach. He shoots his dog. He's placed involuntarily in a mental hospital where he's treated, then released. And less than four days later, this offense occurs. And in those intervening four days, he wasn't taken to the doctor like the parents were told. And again, he's 15. He doesn't have a car. He doesn't have money. He can't do these things. That was parental responsibility. And on top of that, he's complaining that he's having homicidal dreams. And no adults in his life do anything about that. Now, when you also consider the crime itself, you know, and the state argues over, you know, whether Clifford, you know, shot them while they were asleep or whether Clifford shot them when they were startled. But at the end of the day, he absolutely killed two people. But again, this was less than 11 days after he had this sort of break and was involuntarily committed. And regardless of whether we want to call that a suicide attempt or whatever, psychiatrists treated him and he was involuntarily committed. At the end of the day, the record has to prove that Clifford was not the default, that when we look at the totality of the circumstances here that he was worse than the presumption established by Miller that murder does not move the needle towards incorrigibility. And regardless of how much the state attempts to break this case down into fragments in order to justify that life sentence, Clifford's case is about the totality of the circumstances. And neither the state nor the trial court can prove, at least not on this record, that Clifford was not the default. You know, so that brings us back to the original question. How do we know that Clifford was incorrigible and beyond rehabilitation? And the answer is, your honors, we just don't. Not on this record, not on these facts, and not with this defendant. And therefore, Clifford would respectfully request that this court remand for a new sentencing hearing where the trial court can consider the actual facts of the case and also view the factors in aggravation and mitigation through this default that he is not deserving of a life sentence unless he truly is incorrigible. Thank you. Ms. Horner, what would you ask the court to do differently? Well, first, I think, you know, I would ask the court to sort of correct some of these factual mistakes. And we have the IQ issue. We also have the issue of the text messages. And again, I think when you sort of, we talked about this extensively in our reply brief, but it's clear he's referring to those Myspace messages. And it's also clear when you look at the judge's sort of wang of factors, that that played a role in how he determined Clifford behaved in this crime. And so I think those factual mistakes are critical. I also think it's, you know, really important that the trial court attributed to Clifford, you know, an aggravating factor of criminal history. When the PSI says he had no criminal history, there's no allegations he committed other crimes. And the trial court was instead relying on that, that beginning of this sort of sequence of events, 11 days earlier where he shot himself and he shot his dog. And I think to view that as a factor in aggravation as criminal history sort of misunderstands the entire situation here. Okay, thank you very much. But I'd like to follow up with Justice Kate's question. And what you said, Ms. Horner was, you know, you want the court to fix these factual mistakes. And then prior, you talked about the court looking at the totality of the circumstances. Obviously the court looked at the totality of the circumstances that this young man went into a house and shot these two people seven or eight times, if I remember correctly. And in fact, went back, got a different gun and shot the lady square in the forehead, correct? Is that not part of the totality of the circumstances in the court making the finding? You know, Your Honor, I think I would disagree that the court looked at the totality of the circumstances. I think one part of looking at the totality of the circumstances is not just the murder. I think we also have to look at Clifford himself. I think we have to look at the sort of mental health issues he was having prior to this offense. I think we have to look at the parental responsibility in his life or lack there of it. He's telling people he's having homicidal dreams and no one does anything about that four days before this murder. The adults in his life didn't do anything about that. And on top of that, perhaps he did not meet the affirmative defense of insanity, but insanity was certainly a factor that played into this. I mean, it was heavily litigated. There were a number of psychologists that weighed in that perhaps he didn't fully understand what he was doing, which doesn't necessarily make him legally insane, but it certainly goes to the totality of the circumstances. And I think, Your Honor, you're right. Two people died here. It was a horrible situation. But I think when you look at Clifford himself, the way the police found him, behavior that would have suggested he was not in his right mind. And then we also consider that every one of these Miller cases involve murder, Your Honor. There's not a single case out there of Miller where we're not talking about teenagers who kill other people. And again, that makes us uncomfortable, but simply because of this murder doesn't make Clifford not the default here that he can't be rehabilitated later on. Justice, do you have any other questions? No. Thank you. Thank you, counsel. Obviously, you'll have time for rebuttal. Ms. Camden, you ready to proceed? Yes, Your Honor. Then go right ahead. Thank you, Your Honor. May it please the court, counsel, Jennifer Camden on behalf of the people. One quick factual note in response to the defendant's statement that no one took him for follow-up care between his release and the time of the crimes. The record shows that his stepmother figure drove him to a follow-up appointment at a counseling center on August the 2nd as arranged by the Gateway Institute. The crimes occurred on August 4th. The defendant in this case isn't contesting whether the court complied with the procedure set forth in Millard, whether it considered the characteristics of his youth or whether it found that he was irreparably incorrigible. It did consider those characteristics and it did make that finding. He's arguing that the court abused its discretion in assessing and weighing statutory aggravating factors and Miller factors. But the court's assessment of those challenged factors was well within its discretion, as was the sentence. I'd note that the sentence for each of the crimes was below the midpoint of each applicable sentencing range here. And the defendant can't simply point to his total sentence and argue that the court should have weighed the statutory aggravating factors and the Miller factors differently. The trial court was in the best position to assess and weigh these challenged factors along with the evidence of the seriousness of the offense and all other material relevant at sentencing. This case involves just a straightforward use of the court's broad sentencing discretion. And this court should affirm his sentence. First with regard to that claimed factual error, there was testimony at trial that the defendant announced prior to his crimes that he was going to do something bad. And then the defendant gave a video interview which was admitted into evidence at trial and in which he said before the crimes that he texted Lang, spoke to Lang on the phone, spoke to another girl on the phone and quote, I remember telling somebody I was about to do something bad, end quote. So on that record, it's not plain error for the sentencing court to note that the defendant said before the crimes that he was going to do something bad. That statement was supported by the trial record. Also, I'd say that it doesn't matter whether the court was trying to quote the texts in the exhibit. The issue is whether the sentence was clearly and obviously based on a fact not in the record. And here, it was not. That fact was in the record. There were several sources for that information, both from the other witnesses and from defendant himself. Now, the defendant argues that the testimony of Lang and others is based on her assumption about what the defendant meant, but it's still record evidence. The defendant's challenging its weight. And in any event, the defendant's video statement is clear. The defendant argues in the reply brief that his video statement doesn't prove what he said before the murders, but he said after the murders that he said before the murders that he was going to do something bad. He also speculates in the reply brief that the police might have known about Lang's texts with him before his video interview and planted that in his head off camera. But first, of course, that speculation doesn't show plain error. And second, the police report admitted into evidence at Peoples 47A shows that the police interviewed Lang on August 4th at 1.50 in the afternoon and obtained the text at that time. They interviewed the defendant in the hospital more than six hours earlier, so that can't have been what happened. So in sum, the record contains evidence of what the court said, so there's no plain error. With regard to the court statement that he was intelligent, I'd note that he presented evidence at sentencing to support that finding. The evidence was that starting after his original sentencing hearing, he got A's and B's in his academic classes at the Juvenile Detention Center and was asked to teach other students. And after he did initially fail the GED, he continued with his classes and got his high school diploma as class valedictorian. He was described as bright. So on that evidence, the court's statement was not unsupported by the record. It was. I'd also note that that statement, that there was no evidence that the court gave particular weight to that factual finding. Moving on to the defendant's arguments that the court should have found. Can we hold on one second? The court? I think Justice Gates has a question. Okay. I have a question. I'm curious, when you talked about the mid-range of the sentencing, there's a presumption, isn't there, that if the sentence given is within the statutory range, we can assume that the judge did consider all the factors? Am I correct on that? Oh, of course, Your Honor. And any sentence within the range is presumed to be within the court's discretion and will only be found to be in abusive discretion if it's manifestly disproportionate to the crimes. And here, the crimes were breaking into the home of two people and shooting them in their sleep multiple times, as the court noted, and two different home invasions. Right, and so this is my question, really. Why do you think that the judge in this case gave concurrent sentences on these multiple convictions except for the home invasion of the, I'm gonna butcher this name, but the Krzyzewska home invasion? It selected that one to be consecutive. Do you have any information on why that was done? Your Honor, all I know is what's in the record. I would note that I believe that the two murders were ordered to run consecutive as well, that it was just the sentence as to the Mantish home invasion that was ordered to run concurrent. So it was 37.5 plus 37.5 consecutive plus 10 concurrent plus 10 consecutive. Right, you're right. Okay, got it, thank you. You're welcome, Your Honor. So moving on to the defendant's discussion of the Miller factors in mitigation, he argues that the court should have found that he couldn't assess risks and consequences and didn't plan his crime. I'd note that the court assessed those factors and found differently, and that the record does support the court's assessment that he intended to do something bad and had a plan to do something bad. So for that reason, there was no abuse of discretion. I note that Miller guarantees the analysis of these factors, not a particular outcome, and that in the Stafford case cited by the state, the sentencing court didn't find those factors either. Now, the defendant argued that his statement of intent to do something bad, it doesn't show his intent to commit murder, but the court was aware of that and stated that he might not have known exactly what the plan was. So the court didn't sentence the defendant based on a finding that he planned to murder Mantish before he entered their home. I'd also note that the discussion of the facts of this case in the briefs was relevant because the defendant in the opening brief took his video statement as the truth and argued that because he started a fire and panicked when Tish awoke, the court abused its discretion in assessing his ability to consider risks and consequences. And the state's response to that was that there were discrepancies between the defendant's statement and the physical evidence. Namely, there was no fire and the victims were murdered in their sleep. And the court disbelieved the defendant's statement in sentencing him, stating that based on the forensic evidence, he executed them in their sleep. I'd like to discuss the defendant's contesting the court's finding of the statutory aggravating factor of general deterrence. This is an aggravating fact. Okay. Cases, including- I'm sorry, Ms. Camden, your computer hit a glitch or something. We did not hear what you just said. If you could repeat that for us. Oh my goodness, I'm sorry. In the deterrence of others is a statutory aggravating factor that is applicable for use in juvenile cases. And in the cases Fox and Stafford, it was used and those were both juvenile cases. The court in this case was just following the statute in assessing that factor. And the defendant's argument that that factor should not be applied in juvenile cases is better suited for the legislature because it was a factor eligible for consideration in this case. The defendant theorizes that the court hoped or must have hoped to deter juveniles who are less likely to be deterred. But the court never said that its goal was specific deterrence of the defendant or of other juveniles. It stated that the sentence was necessary to deter others. So his speculation that the court meant something other than what it said doesn't meet his burden of showing error. The general deterrence factor isn't about youth. The other can be of any age. And although Miller stated that juveniles are not susceptible to deterrence, that doesn't mean that it's error to find the statutory aggravating factor of general deterrence in sentencing the juvenile. It's not. And the defendant argues that his sentence won't deter adults, but his argument about the efficacy of a juvenile's sentence as a general deterrent is again, one for the legislature, not this court. He also argues that his crime was unique and unplanned. I see that I'm out of time. You can go right ahead and finish your thought. Thank you. Just that he argues that his crime was unique and unplanned, but first courts have upheld the application of the factor in sentencing for offenses that were not premeditated or where the defendant had mental health issues and that every crime is unique and the court could have hoped to deter the very common crimes of murder and home invasion in finding the application of this factor. So for these reasons and the reasons stated in the people's answer brief, we respectfully request that the court affirm. Thank you, counsel. Justice, do you have any questions for Ms. Camden? I do not. Thank you. Ms. Horner, any rebuttal? You're on mute. I am sorry. Just a few points, your honor. The first thing I want to note is that Justice Cates asked whether we can presume that because something is within the sentencing range that the trial court didn't abuse discretion. And I generally agree that that is the appropriate standard, particularly where we are looking at just an abuse of discretion. And had Clifford Baker been an adult when he committed these crimes, I think that's probably the right analysis. But as many cases that are reviewing juvenile cases, no, juveniles are different here. And simply because it's within the sentencing range doesn't necessarily mean that it complies with Miller. And this is about more than an abuse of discretion. Miller is a constitutional issue. And so to some extent, whether the trial court complied with Miller isn't about an abuse of discretion. It's about a de novo review. Because whether or not you comply with a constitutional right isn't reviewed just for abuse of discretion. So I would state that this is one of those interesting carve-outs where, once again, I think juveniles are treated differently than their adult counterparts. Perhaps the biggest sort of factual contention in this issue is what the trial court was referring to regarding Clifford's statement that he did something bad. Given the amount of time that we've briefed on it, it's obviously very critical to this. First, I would point out that Clifford's not speculating about where the trial court got this information. The trial court states in its order that it's referring to the MySpace messages. And the only MySpace messages admitted at trial were between Clifford and Kelly Lang. So if we just look at the trial court's own words, we know what the trial court was referring to there. And those text messages simply don't state exactly what the trial court said that it did. And that distinction is important. The other part is, Clifford said a lot of things after he was arrested. And when one watches the interrogation video, you can see that he's been tased. He's high, he's drunk, he's hooked to IVs, and he has a catheter in. And so Clifford has challenged his statements from the very beginning. But it's interesting that the state wants to use those statements to prove that Clifford stated he did something bad, but then argue that absolutely everything else he said during those statements wasn't credible. Either Clifford was sort of making credible statements to the police there, or he wasn't. And it's kind of ironic that we're gonna pick and choose based on what suits the state's arguments best, I suppose. Particularly when the trial court didn't rely on Clifford's statements, it relied on the messages themselves. And it's hard to argue that what Clifford said and stated in writing that Lange's memory at trial is better than the actual messages themselves. And when we look at the trial, the evidence about those text messages came from Kelly Lange and it came from a police officer talking about that interrogation video. But in terms of Kelly Lange, they asked her what she thought it meant. And she speculated that it meant that he was going to do something bad. It seems sort of, I guess, sort of ridiculous to put more weight on what she was speculating Clifford meant than what the messages said themselves, especially given that Lange and Clifford had been in a relationship for less than a week. She had known Clifford for roughly a week. And then in terms of his intelligence, being able to eventually pass a GED test or get your high school diploma after multiple years, that showed at his sentencing hearing that Clifford was working to improve himself. And as he was maturing, he was making strides in doing so. It doesn't indicate that at the time he was 15 and committing these offenses, that his intellect allowed him to extricate himself from the situation, which is what the trial court was suggesting when it was talking about that Miller factor. And in particular, we know that Clifford wasn't doing very well at school when he was 15, if we can even consider eventually passing a GED or a high school diploma, a sign of intelligence. But to the extent that it is, when he was 15, he was failing his classes and doing poorly in school, perhaps because he was moved around a lot and had a very unstable home life. But in any event, the trial court did make those factual errors and a review of the record indicates that. Ms. Horner, I have one question. Yes. Do you believe the standard of review in this case is de novo or abuse of discretion? Your honors, I think when we look at a case like Lesbi, for example, which is again, reviewing these cases, the trial court, or I'm sorry, the Illinois Supreme Court said that we look at the totality of the circumstances. I think that this is not a strict abuse of discretion sentencing case. In our opening brief, we argued that it was both de novo and potentially an abuse of discretion. I think in terms of the Miller factors themselves, and to the extent that youth is a constitutional mitigation evidence, is constitutionally mitigating evidence, I'm sorry, that it should be reviewed de novo. And where the trial court, whether it complied with Miller and its requirements, it should be reviewed de novo. So in this case, do you believe the standard of review is de novo or abuse of discretion? Your honors, I think that whenever we're talking about factual determinations, the same sort of factual determination standard of review would apply. So we're looking at whether or not the trial court abused its discretion in making these sort of factual considerations. But in terms of whether a constitutional process was complied with, yes, I think it would be de novo. So, and you haven't answered my question. Are you saying both standards apply in this case? Are you saying- Yes, your honor. I think that, yes, that's what I'm saying, that obviously the trial court gets deference for factual findings unless they're, as we've indicated here, not in the record. But whether a process has been complied with, whether Clifford was denied his sort of constitutional rights here in sentencing, I think is reviewed de novo. Okay, thank you. Thank you, Justice Bowie. Thank you. Justice Barber, do you have any questions? I do not, thank you. All right, counsel, thank you very much. Again, I appreciate your patience with us this morning. This matter will be taken under advisement and an order will be issued in due course. I believe this concludes our oral arguments courts for today and the court will be in recess. Thank you very much.